BEFORE THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

}

Case No. 4:25-cv-00074-W-BCW

**Before the Honorable
Fernando J. Wimes**

JAMES CLIFFORD, and
LATISHA BROWN,

**Plaintiffs,**

v.

816 PROPERTY MANAGEMENT LLC,

**Defendant.**

## PLAINTIFFS' CONSOLIDATED LITIGATION FRAMEWORK, REQUEST FOR CLERK'S ENTRY OF DEFAULT, AND MASTER STATEMENT OF DAMAGES

COME NOW Pro Se Plaintiffs James Clifford and Latisha Brown, and respectfully submit this Consolidated Litigation Framework, Request for Clerk's Entry of Default, and Master Statement of Damages to the Honorable Court in support of their pending Omnibus Motion for Summary Judgment, or in the Alternative, Default Judgment.

Plaintiffs respectfully request that the Court accept this integrated document ahead of the scheduled teleconference hearing. Because Defendant 816 Property Management LLC has continuously failed to answer, plead, retain licensed counsel, or otherwise defend its interests in this federal action, Plaintiffs bring forth this formal compilation to clarify the dual-track procedural parameters under Federal Rules of Civil Procedure 55 and 56, and to itemize the exact scope of compensatory, consequential, and punitive relief required to remedy the extensive injuries sustained.

---

**PART I: REQUEST FOR CLERK'S ENTRY OF DEFAULT PURSUANT TO F.R.C.P. 55(A)**

Plaintiffs respectfully petition the Clerk of this Honorable Court, and the Court itself, to formally enter the default of Defendant 816 Property Management LLC on the master docket pursuant to

Rule 55(a) of the Federal Rules of Civil Procedure. In support of this administrative request, Plaintiffs show the Court as follows:

- **1. Perfected Service of Process:** Defendant 816 Property Management LLC was legally, properly, and fully served with the Summons and Complaint initiating this action.

- **2. Absolute Failure to Plead or Defend:** Pursuant to Federal Rule of Civil Procedure 12, the Defendant was legally mandated to serve an answer or present a responsive motion within twenty-one (21) days of service. To date, no answer, motion to dismiss, or extension request has been filed.

- **3. Absolute Absence of Counsel:** As a corporate entity, Defendant cannot appear pro se under federal law. Defendant has failed to retain licensed legal counsel to enter an appearance or protect its operational standing.

- **4. Clean Procedural Track:** This request satisfies the prerequisite conditions of Rule 55(a), clearing the path for the Court to resolve liability conclusively via a default final judgment.

## PART II: THE CONSOLIDATED RULE 55 & RULE 56 LIABILITY FRAMEWORK

Plaintiffs respectfully submit that the total absence of the Defendant provides two clear, complementary legal pathways for this Court to rule decisively in the Plaintiffs' favor:

- **1. The Rule 55 Default Track:** Upon the formal administrative entry of default under Rule 55(a), the Defendant legally admits to every well-pleaded factual allegation contained within the Plaintiffs' Complaint. This includes the definitive assignment of corporate liability for creating and sustaining a hostile housing environment under the Fair Housing Act, a severe and actionable breach of the statutory covenant of habitability, and constructive eviction.

- **2. The Rule 56 Summary Judgment Track:** Because the Defendant has chosen not to participate, it has entirely failed to dispute or challenge any of the evidentiary findings put forth. Accordingly, Plaintiffs' Statement of Uncontroverted Material Facts stands entirely undisputed, verified, and true on the record. There exists no genuine issue as to any material fact, thereby legally validating an entry of Summary Judgment under Rule 56.

## PART III: ITEMIZED COMPENSATORY AND CONSEQUENTIAL DAMAGES

As a direct, proximate, and foreseeable consequence of Defendant's willful refusal to remediate severe safety hazards, its absolute disregard of a hostile housing environment, its failure to intervene following a violent physical assault on the premises in January 2025, and its subsequent retaliatory consumer debt harassment, the Plaintiffs and their minor children have suffered severe financial devastation alongside profound, permanent psychological trauma. Plaintiffs itemize their specific, calculable out-of-pocket and special damages as follows:

## A. Veteran Benefit Income Interruption (Plaintiff James Clifford)

The intense logistical, physical, and mental burden of protecting a family within an unmitigated hostile domestic environment actively disrupted Plaintiff James Clifford's capacity to stabilize his medical treatments and administer his personal affairs. This severe housing-induced instability caused a direct disruption in coordinating his veteran benefits, temporarily and wrongfully withholding critical stabilization funds from the household during the absolute height of the residential crisis.

- **The Income Differential:** Official monthly VA income was $1,800.00 and increased to $3,900.00, creating an absolute baseline household gap of $2,100.00.
- **Disruption Timeline:** August 2024 through March 2025, spanning exactly eight (8) months of acute tenant-related domestic disruption.
- **Calculation:** $2,100.00 monthly differential × 8 months
- **Total VA Benefit Interruption Subtotal:** $16,800.00

## B. Post-Relocation Malicious Debt Harassment ($7,200.00 Claim)

On July 28, 2025, Plaintiffs vacated the premises pursuant to a mutual agreement terminating the tenancy. Furthermore, the prior state court landlord-tenant action concerning this exact matter was formally and permanently **dismissed with prejudice**.

Despite this absolute legal bar—which completely and permanently extinguished any alleged lease balances—Defendant willfully, maliciously, and fraudulently placed a false balance of **$7,200.00** into commercial collection systems and onto Plaintiffs' credit files. This ongoing collection action constitutes fraudulent debt reporting, active civil harassment, and intentional infliction of emotional distress, executed to penalize the Plaintiffs for exercising their legal rights.

- **Statutory & Harassment Value:** $7,200.00

## C. Total Lease Contract Value Reconstruction

Plaintiffs entered into a binding, long-term 2-year lease agreement with the Defendant at a fixed contract rate of $1,600.00 per month. Because Defendant completely failed to address the dangerous, hostile living environment throughout the entirety of their management liability window (August 2024 to July 2025), Plaintiffs were entirely deprived of the quiet enjoyment, safety, and basic habitability promised under that 24-month agreement. This failure culminated in their forced constructive eviction on July 28, 2025. Plaintiffs claim a consequential damages adjustment tracking the complete loss of value of this 2-year housing contract.

- **Contract Parameters:** 24-Month Lease Agreement at $1,600.00/month
- **Calculation:** $1,600.00 × 24 months

• **Total Rent & Lease Value Subtotal:** $38,400.00

**D. Employment Loss and Front Pay (Plaintiff Latisha Brown)**

Prior to the escalation of the housing trauma, Plaintiff Latisha Brown was successfully employed as a Retention Sales Representative at Spectrum, earning a base wage of $18.00 per hour plus performance-based commissions. Following the January 2025 physical assault, the extreme emotional distress, acute PTSD, panic attacks, and severe sleep deprivation directly caused by the unaddressed, hazardous living conditions dismantled her capacity to maintain her mandatory corporate sales metrics and working hours.

• **1. Past Missed Wages & Commissions (February 2025 – May 2025):** Due to documented severe PTSD episodes and panic attacks stemming directly from the housing environment, Plaintiff missed critical shifts and suffered a drastic drop in sales metrics prior to her resignation.
  • *Total Past Employment Loss:* $7,920.00

• **2. Future Lost Base Wages / Front Pay (May 2025 – May 2026):** In May 2025, pushed to a physiological and psychological breaking point by the unaddressed housing trauma, Plaintiff was forced to resign from her career position. Plaintiffs claim one full year of future lost base wages from the date of resignation to the current hearing date.
  • *Calculation:* 40 hours/week × $18.00/hour × 52 weeks = $37,440.00

• **3. Future Lost Sales Commissions (May 2025 – May 2026):** Based on a conservative baseline of Plaintiff's performance metrics prior to the trauma, Plaintiff lost one full year of projected commission income.
  • *Total Future Commission Loss:* $12,000.00

• **Total Employment Loss Subtotal:** $57,360.00

**E. Household Transportation Loss and Out-of-Pocket Expenses**

The sudden, catastrophic elimination of household income resulting directly from the housing-induced career termination forced the family into immediate financial distress, leading directly to the loss and repossession of the primary family vehicle.

• **1. Lost Vehicle Asset/Equity:** Capital loss and equity stripped away due to forced non-payment caused directly by the financial fallout of the defendant's actions.
  • *Estimated Asset Loss Value:* $5,000.00

• **2. Out-of-Pocket Rideshare Expenses (May 2025 – May 2026):** Following the loss of the vehicle, the household was forced to rely entirely on expensive rideshare services (Uber and Lyft) for essential operations, primarily ensuring that the plaintiffs' minor children could safely get to and from school, and traveling to necessary medical and therapy appointments.
  • *Calculation:* Average baseline of $175.00 per week × 52 weeks = $9,100.00

- **Total Transportation Loss Subtotal:** $14,100.00

---

## PART IV: CONSOLIDATED ACCOUNTING OF TOTAL DAMAGES DEMANDED

Plaintiffs respectfully request that the Court enter judgment against Defendant 816 Property Management LLC and award damages under the following structured ledger:

- **Veteran Benefit Income Interruption (Aug 2024 - Mar 2025):** $16,800.00
- **Post-Eviction Collection Debt Harassment Claim:** $7,200.00
- **Lease Contract Value Reconstruction ($1,600 × 24 mos):** $38,400.00
- **Past and Future Employment Loss (Latisha Brown):** $57,360.00
- **Household Transportation Asset Loss & Out-of-Pocket Transit:** $14,100.00
- **TOTAL CALCULABLE ECONOMIC AND SPECIAL DAMAGES: $133,860.00**
- **GENERAL COMPENSATORY DAMAGES (Both Plaintiffs):** For severe PTSD, acute anxiety, physical trauma, and the continuous loss of residential safety, stability, and quiet enjoyment to be determined by the Court.
- **PUNITIVE DAMAGES (The Household Unit): $2,000,000.00 to $3,000,000.00** for the explicit punishment and complete commercial deterrence of intentional, malicious corporate fraud and deliberate indifference to tenant safety under federal constitutional guideposts.

---

## PART V: LEGAL REASONING IN SUPPORT OF PUNITIVE DAMAGES

Plaintiffs respectfully request that this Court assess punitive damages against Defendant 816 Property Management LLC in the range of $2,000,000.00 to $3,000,000.00. Under established federal jurisprudence and the constitutional guideposts outlined by the United States Supreme Court in *State Farm v. Campbell*, 538 U.S. 408 (2003), this evaluation is fully justified based on three distinct criteria:

- **1. Extreme Reprehensibility of Conduct:** Defendant's behavior exceeds a standard contractual or management dispute; it constitutes active corporate malice. Defendant intentionally chose to ignore severe structural safety hazards and an active hostile housing environment following a physical assault. Furthermore, Defendant maliciously waited until Plaintiffs vacated the property under a mutual agreement on July 28, 2025, and after a state court case was **dismissed with prejudice**, to weaponize a completely fraudulent $7,200 debt. This calculated attempt to destroy a veteran household's consumer credit reporting demonstrates extraordinary reprehensibility.

- **2. Constitutional Multiplier Ratio:** Plaintiffs' concrete out-of-pocket economic damages stand at $133,860.00. When combined with substantial general compensatory claims for severe emotional distress, continuous panic attacks, and long-term PTSD suffered by two separate adult co-plaintiffs, a punitive award within the requested range represents a valid, single-digit multiplier (approximately 6x to 8x) of the total compensatory framework, fitting cleanly within federal constitutional constraints.

- **3. Absolute Commercial Deterrence:** Defendant 816 Property Management LLC is a commercial entity operating for profit. If a punitive award is minor, commercial landlords treat such penalties merely as a routine "cost of doing business," and the public interest is never vindicated. A significant multi-million dollar penalty is legally necessary to fulfill the true purpose of punitive damages: achieving a genuine deterrent effect that ensures corporate housing practices are systemically corrected.

Respectfully submitted,

Dated: May 18, 2026

_____     _____

James Clifford, Co-Plaintiff, Pro Se        Latisha Brown, Co-Plaintiff, Pro Se